GRIEB, Appellant, v. CITIZENS CASUALTY COMPANY, Respondent.

*January 3—January 31, 1967.*

For the appellant there was a brief by *Arnold, Murray & O'Neill* of Milwaukee, and oral argument by *Suel O. Arnold.*

For the respondent there was a brief by *Stanley F. Schellinger,* attorney, and *James G. Doyle* of counsel, both of Milwaukee, and oral argument by *Mr. Doyle.*

HALLOWS, J. In October of 1957, Donald L. Grieb entered into a contract with the Milwaukee Park Commission under which he was to prepare plans and specifica-

tions for and supervise the construction of a botanical conservatory in Mitchell Park, Milwaukee. A unique conservatory ultimately was constructed which consisted of three 80-foot-high metal and glass geodesic domes connected by a one-story structure. The contract required Grieb to maintain in force an architect's professional liability errors-and-omissions policy during the planning and construction of the conservatory. The policy issued by Citizens provided it would pay all sums Grieb might become legally obligated to pay as damages because of liability arising out of any act of negligence, error, mistake or omission in rendering professional architectural services.[1] Citizens also undertook to defend any suit against Grieb which alleged any act of negli-

---

[1]               "Insuring Agreements

"I. Coverage
"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of liability arising out of any act of negligence, error, mistake or omission, committed during the Policy Period or prior to the inception date of this Policy, in rendering or failing to render professional architectural services, whether performed by the Insured or by others for whom the Insured is legally responsible, . . .

"II. Defense, Settlement, Supplementary Payments
"With respect to such insurance as is afforded by this Policy, the Company shall:

"(a) defend any suit or arbitration proceeding against the Insured which alleges any act of negligence, error, mistake or omission and seeks damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation, and settlement of any claim or suit as it deems expedient; . . .

"Exclusions
"This Policy does not apply:
". . .

"(d) to dishonest, fraudulent, criminal or malicious acts or omissions, or those of a knowingly wrongful nature committed intentionally by, or at the direction of the Insured."

gence, error, mistake or omission and sought damages on account thereof. The policy excluded from coverage dishonest, fraudulent, criminal or malicious acts or omissions and those of a knowingly wrongful nature intentionally committed.

During the policy period a taxpayers' suit was commenced against Grieb, Super Sky Products, Inc., and Milwaukee county. The complaint detailed many acts which were allegedly performed in furtherance of a conspiracy between Grieb and Super Sky and intended to give Super Sky an unfair advantage over other bidders for the job of constructing the domes. The complaint sought to void the contract between Super Sky and Milwaukee county, plus damages and other relief.

On this appeal Grieb contends that although the taxpayers' suit was one for conspiracy Citizens had a duty to defend under its indemnity clause, which he claims indemnifies against any act of negligence, error, mistake or omission and is not confined to allegations of such acts in a third-party pleading as is the defense-coverage clause. Because of this he argues Citizens has an implied corollary duty to defend any type of action so long as any act of negligence, error, mistake or omission is committed by him.

We think Citizens' duty to defend under its policy is not so broad as contended for by Grieb. While errors-and-omissions policies for professional men are of relatively recent origin in the insurance industry, the principles governing their construction are the same as those applied to indemnity and liability policies.[2] An errors-and-omissions policy is professional-liability insurance providing a specialized and limited type of coverage compared to general comprehensive insurance. It is designed

---

[2] See 29A Am. Jur., Insurance, p. 565, sec. 1452; *American Policyholders Ins. Co. v. Michota* (1952), 156 Ohio St. 578, 103 N. E. (2d) 817; Anno. Insurance—Professional Liability, 35 A. L. R. (2d) 452.

to insure members of a particular professional group from liability arising out of the special risk such as negligence, omissions, mistakes and errors inherent in the practice of the profession. The coverage generally excludes, as the instant policy does, intentional torts and dishonest, wrongful and malicious acts of commission and omission. These professional-liability policies differ in detail depending upon the company which issues them and are generally called malpractice insurance when issued to members of the healing profession where the exposure is largely bodily injury and errors-and-omissions insurance where the risk is primarily that of damage to intangible property such as coverage for attorneys, insurance agents, and architects.[3]

No claim is made by Grieb on this appeal that Citizens has a duty to defend the conspiracy suit under the express defense-coverage clause in the policy. The duty under this clause, as correctly held by the trial court, is restricted to suits for damages grounded upon, arising out of, or because of acts of alleged negligence, omission, mistake or error. The duty under this clause does not extend to intentional torts such as conspiracy and furthermore acts constituting a conspiracy are excluded by the exclusion clause even though we construe that clause against the insurer, as we are bound to do.

Whether a third-party suit comes within the coverage of this clause or within the coverage of an implied duty to defend under an indemnity clause depends upon its allegations which are referred to as a general rule as the measure in the first instance. These allegations must state or claim a cause of action for the liability insured against or for which indemnity is paid in order for the suit to come within any defense coverage of the policy

[3] See articles in The National Underwriter (June 24, 1966), p. 1, and (Aug. 26, 1966), p. 4; Fire, Casualty & Surety Bulletins, Vol. 2, Professional Liability (National Underwriter Co.); 1964 Insurance Law Journal, 461, 467; and 13 Couch (2d), Insurance, p. 605, sec. 48:161.

unless the express defense coverage is broader. *Aitchison v. Founders Ins. Co.* (1958), 166 Cal. App. (2d) 432, 333 Pac. (2d) 178. It is the nature of the claim alleged against the insured which is controlling even though the suit may be groundless, false or fraudulent. *Wilson v. Maryland Casualty Co.* (1954), 377 Pa. 588, 105 Atl. (2d) 304; *Wisconsin Transportation Co. v. Great Lakes Casualty Co.* (1942), 241 Wis. 523, 6 N. W. (2d) 708; 7A Appleman, Insurance Law & Practice, p. 441, sec. 4683. *National Surety Corp. v. Musgrove* (5th Cir. 1962), 310 Fed. (2d) 256 (an errors-and-omissions policy). Conversely stated, "the insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case," 29A Am. Jur., Insurance, p. 565, sec. 1452.

There are at least four exceptions to the general rule determining the extent of the insurer's duty to defend and generally the insurer who declines to defend does so at his peril. These and allied problems are extensively covered in Anno. Liability Insurer—Duty to Defend, 50 A. L. R. (2d) 458.

We do not agree that the indemnity clause in Citizens' policy gives rise to a duty to defend and we think Grieb's argument to be fallacious for two reasons: (1) When there is an express undertaking to defend in the policy, such express defense-coverage clause negates any implication of a duty to defend which enlarges or is inconsistent with such coverage; and (2) the indemnity clause does not indemnify against any act of negligence or any omission, error or mistake but against liability for damages because of or arising out of or grounded upon an act of negligence or an act of error, mistake or omission. Unless there is liability for damages based on such acts of omission or commission, there is no duty to pay or indemnify.

Grieb relies on *Runyan v. Continental Casualty Co.* (D. C. Or. 1964), 233 Fed. Supp. 214, 2 A. L. R. (3d) 1238, 1245, one of the few cases involving an errors-and-omissions policy issued to an architect. But in *Runyan* the court most liberally construed the pleadings in the suit against the insured. There, a complaint alleging malicious and unjustified interference with the plaintiff's employment contract was considered as a complaint for damages for a wrongful discharge which the architect committed in the course of his duties. Under either theory of pleading the third party could have recovered and under one the insurer would be obligated to indemnify.

In *Firco, Inc., v. Fireman's Fund Ins. Co.* (1959), 173 Cal. App. (2d) 524, 343 Pac. (2d) 311, also cited by Grieb, the pleadings were doubtful in the sense that an intentional tort was pleaded which was outside the coverage but the facts alleged could support a claim of mere wrongfulness and therefore be within the coverage of the policy. The court, as in *Runyan,* found a duty to defend. Although we think these cases strain even the plasticity of the third party's allegations and ought not be followed, it must be noted in distinction to the instant case that in both cases a cause of action was found which came at least potentially within the coverage of the policy.

But the conspiracy suit brought by the taxpayers, even under liberal rules of pleading, could not be considered as stating a cause of action for liability for negligence, omissions, mistakes or errors. We think assuming a duty to defend can be implied from the indemnity clause that it must reasonably have some relation to a suit claiming liability for damages because of an act of negligence, error, mistake or omission. It is not sufficient under Citizens' policy that the facts alleged might under other circumstances be characterized as acts of unintentional negligence, error, mistake or omission.

*By the Court.*—Judgment affirmed.