REGENT INSURANCE COMPANY, and General Casualty Company of Wisconsin, Plaintiffs-Respondents,

v.

CITY OF MANITOWOC, Defendant-Appellant,†

EMPLOYERS INSURANCE OF WAUSAU, Viking Insurance Company of Wisconsin, Home Insurance Co., and the Aetna Casualty & Surety Company, Defendants-Respondents.

Court of Appeals

*No. 95–2401. Oral argument September 25, 1996.—Decided October 15, 1996.*

(Also reported in 556 N.W.2d 405.)

†Petition to review abeyance.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Arthur J. Harrington, James G. Schweitzer,* and *Michael B. Apfeld* of *Godfrey & Kahn, S.C.,* of Milwaukee. There was oral argument by *Michael B. Apfeld.*

On behalf of the plaintiffs-respondents and defendants-respondents, the cause was submitted on the joint brief of *Thomas N. Harrington* and *Laura E. Schuett* of *Cook & Franke, S.C.,* of Milwaukee, for Regent Insurance Company and General Casualty Company of Wausau; *Richard M. Hagstrom* and *John C. Goodnow* of *Zelle & Larson,* of Minneapolis, Minnesota, for Employers Insurance of Wausau; *W. Barton Chapin* of *Crivello, Carlson, Mentkowski & Steeves, S.C.,* of Milwaukee, for Viking Insurance Company of Wisconsin; *Diana Young Morrissey* of *Faegre & Benson,* of Minneapolis, Minnesota, for Home Insurance Company; and *Thomas R. Schrimpf* of *Hinshaw & Culbertson,* of Milwaukee, for The Aetna Casualty & Surety Company. There was oral argument by *Thomas N. Harrington* and *Richard M. Hagstrom.*

Amicus Curiae brief was filed by *James E. Doyle,* attorney general, and *Frank D. Remington,* assistant attorney general, for the State of Wisconsin.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J.  The City of Manitowoc appeals from a judgment that Regent Insurance Company, General Casualty Company of Wisconsin, Employers Insurance of Wausau, Viking Insurance Company of Wisconsin, Home Insurance Company, and Aetna Casualty & Surety Company did not have to defend or indemnify Manitowoc for environmental cleanup costs under the

terms of their comprehensive general liability and excess-insurance policies. We affirm.[1]

## I.

The facts pertinent to this appeal are not disputed. Lawsuits were filed against Manitowoc and others by both the United States and the State of Wisconsin seeking the costs of remediating contamination of two landfill sites. The United States action was filed in federal court pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Authorization Act of 1986, Pub. L. No. 99-499, all commonly known as either "Superfund" or by the acronym CERCLA. *Continental Ins. Cos. v. Northeastern Pharmaceutical & Chem. Co., Inc.,* 842 F.2d 977, 980 (8th Cir. 1988) *(en banc), cert. denied sub nom., Missouri v. Continental Ins. Cos.,* 488 U.S. 821. The action brought by Wisconsin was also filed in federal court pursuant to the Act.

The complaint filed by the United States alleged, *inter alia*, that, under § 107(a)(4)(A) of the Act, 42 U.S. C. § 9607(a)(4)(A), Manitowoc was responsible for part of the contamination, and, with the others, was "jointly and severally liable for all costs incurred by the United States in responding" to the contamination. The complaint sought from the defendants, including Manitowoc, "all response costs incurred by the United States" together with ancillary "injunctive relief necessary to remedy the conditions that present or may present an imminent and substantial endangerment to public health or welfare or the environment," as well as

---

[1] An *amicus* brief has been filed by the State of Wisconsin seeking reversal of the trial court's judgment.

a declaration that the "defendants are liable for future response costs." The complaint filed by Wisconsin made similar allegations and sought from the defendants "all response costs incurred by the State of Wisconsin," as well as a declaration that the "defendants are liable for future response costs." Neither complaint sought "damages" under § 107(a)(4)(C) of the Act, 42 U.S.C. § 9607(a)(4)(C), for "injury to, destruction of, or loss of natural resources," or, as also permitted by that subsection "the reasonable costs of assessing such injury, destruction or loss."[2]

Both cases were settled by Manitowoc and the other defendants, and a consent decree embodying the settlement was approved by the federal court.[3] Under

---

[2] The term "natural resources" is defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Authorization Act of 1986, Pub. L. No. 99-499, to mean all "land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson Fishery Conservation and Management Act), any State or local government, any foreign government, any Indian tribe, or, if such resources are subject to a trust restriction on alienation, any member of an Indian tribe." *See State of Colorado v. U.S. Dept. of the Interior*, 880 F.2d 481, 483 (D.C. Cir. 1989) (section 107(a)(4)(C) of the Act, 42 U.S.C. § 9607(a)(4)(C), authorizes recovery of "damages" resulting from injury to "publicly owned or controlled natural resources"). There is no evidence in the record that any of the property that was the subject of the federal-court actions was within this definition of "natural resources."

[3] The consent decree was signed by Manitowoc on April 7, 1992, before the federal-court actions were filed by either the

the terms of the consent decree/settlement, Manitowoc agreed, among other things, to be jointly and severally liable for the costs incurred and to be incurred by the United States and Wisconsin in connection with the landfills, as well as the costs resulting from an agreed-to plan for environmental remediation.

## II.

This case was decided on cross-motions for summary judgment. Summary judgment is used to determine whether there are any disputed facts that require a trial, and, if not, whether a party is entitled to judgment as a matter of law. RULE 802.08(2), STATS.; *U.S. Oil Co., Inc. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 86, 440 N.W.2d 825, 827 (Ct. App. 1989). Although assisted greatly by a lucid and tightly reasoned written decision by the trial court, our review of a trial court's grant of summary judgment is *de novo*. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

The only issue on this appeal is whether the insuring clauses in the respective policies require the insurance companies to defend and indemnify Manitowoc in connection with the federal court proceedings. As material here, the clauses are substantially identical. With minor variations of typography and punctuation that are not material to our analysis, the insurance policies promise to pay "all sums" that Manitowoc "shall become legally obligated to pay as damages because of . . . personal injury or

United States or the State of Wisconsin. Notice that the consent decree had been lodged with the federal court was filed on June 1, 1992, the same day the United States commenced the federal-court action against Manitowoc and the others.

property damage to which this insurance applies, caused by an occurrence"; further, the policies, other than those issued by the excess insurers, Viking and Employers Insurance of Wausau in that capacity (Wausau also provided underlying insurance for part of the relevant period), promise to "defend any suit against" Manitowoc "seeking damages on account of such personal injury or property damage." The Wausau umbrella policy promises to defend "any claim or suit seeking damages . . . for which no defense coverage . . . is provided by underlying insurance or by any other valid and collectable insurance available to the insured."

As we have recently explained:

> An insurance company's duty to defend an insured sued by a third party is determined solely by the allegations in that third party's complaint. *Kenefick v. Hitchcock*, 187 Wis. 2d 218, 231-232, 522 N.W.2d 261, 266 (Ct.App.1994). Any doubt as to whether or not the insurance company has a duty to defend is " 'resolved in favor of the insured.' " *Id.*, 187 Wis. 2d at 232, 522 N.W.2d at 266 (citation omitted). Although an insurance company that "declines to defend does so at [its] peril," *Grieb v. Citizens Casualty Co.*, 33 Wis. 2d 552, 558, 148 N.W.2d 103, 106 (1967), it is not liable to its insured unless there is, in fact, coverage under the policy, *id.*, 33 Wis. 2d at 558-559, 148 N.W.2d at 106-107, or coverage is determined to be "fairly debatable," *United States Fire Ins. Co. v. Good Humor Corp.*, 173 Wis. 2d 804, 830, 496 N.W.2d 730, 739 (Ct. App.1993).

*Production Stamping Corp. v. Maryland Casualty Co.*, 199 Wis. 2d 322, 326–327, 544 N.W.2d 584, 586 (Ct. App. 1996).

This appeal is guided by *City of Edgerton v. General Casualty Co.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994), *cert. denied*, — U.S. —, 115 S. Ct. 1360, which also involved the remediation of environmental contamination, and where the insurance companies similarly promised to defend any "suit seeking damages," and to indemnify the insureds for "damages" that the insureds were "legally obligated to pay." *Id.*, 184 Wis. 2d at 769, 517 N.W.2d at 472. In *City of Edgerton*, the government did not sue to compel environmental remediation. *Id.*, 184 Wis. 2d at 758–762, 517 N.W.2d at 468–469. Rather, the government told the city that it was a potentially responsible party in connection with the contamination and sought "voluntary" remediation. *Id.*, 184 Wis. 2d at 760–762, 517 N.W.2d at 468–469. *City of Edgerton* held that this notification did not trigger the insurance companies' duty to defend because the notification was not the equivalent of a "suit." *Id.*, 184 Wis. 2d at 758, 779–782, 517 N.W.2d at 468, 476–477. The court reasoned that the administrative actions, compulsory as they might have been, were not "suit[s,]" which "denote[ ] court proceedings, not a 'functional equivalent.' " *Id.*, 184 Wis. 2d at 781, 517 N.W.2d at 477. Thus, it held that "no complaint has been filed which would initiate a suit and invoke the insurers' duty to defend." *Id.*, 184 Wis. 2d at 781–782, 517 N.W.2d at 477.

Although contested by the insurance companies, we assume for the purpose of this decision that here, unlike the situation in *City of Edgerton*, Manitowoc was a defendant in a "suit"—complaints were filed and

458

served, although the city never either answered the complaints or responded to them by motion, and Manitowoc agreed to the settlement before the actions were filed.[4] This does not end our analysis, however, because the second part of the insuring obligation requires that the suit or, as pertinent to the Wausau umbrella policy, "claim," be one for "damages." Thus, the issue is whether past and future remediation costs are "damages" as that term is used in the policies. *City of Edgerton* is dispositive.

*City of Edgerton* has unambiguously held that the type of insurance policies at issue here, "do not provide coverage Superfund response costs, since such costs do not constitute damages." *Id.*, 184 Wis. 2d at 782, 517 N.W.2d at 477. The court pointed out that § 107(a) of the Act, 42 U.S.C. § 9607(a), made a distinction between, on the one hand, "damages," which result from "injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing

---

[4] The insurance companies argue that the federal-court actions were only prerequisites to the formalization of Manitowoc's settlement "as part of the administrative process required to lodge the Consent Decree." Thus, they contend that the federal-court actions were not "suits" as that term is used in the insurance policies because they were not really proceedings by which the governments were pursuing their remedy. *See City of Edgerton*, 184 Wis. 2d 750, 774, 517 N.W.2d 463, 474 (1994) (a "suit" is " 'any proceeding by one person or persons against another or others *in a court of law* in which the plaintiff pursues, *in such court*, the remedy which the law affords him for the redress of an injury or the enforcement of a right, whether at law or in equity' ") (citation omitted, emphasis in quoted material). We leave this intriguing argument for resolution on another day. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

such injury, destruction, or loss," that is, destruction or diminution-of-value of environmental resources that are owned or controlled by a government or Indian tribe, § 107(a)(4)(C) of the Act, 42 U.S.C. § 9607(a)(4)( C); *State of Colorado v. U.S. Dept. of the Interior*, 880 F.2d 481, 483 (D.C. Cir. 1989) (section 107(a)(4)(C) of the Act, 42 U.S.C. § 9607(a)(4)(C), authorizes recovery of "damages" resulting from injury to "publicly owned or controlled natural resources"), and, on the other hand, "costs," which result from the "removal [of the contamination] or remedial action" undertaken by "the United States Government or a State" in connection with property that need not be publicly owned or controlled, § 107(a)(4)(A) of the Act, 42 U.S.C. § 9607(a)(4)(A). *City of Edgerton*, 184 Wis. 2d at 782–783 n.28, 784–785, 517 N.W.2d at 477 n.28, 478–479. Significantly, the settlement/consent decree in this case specifically reserved to the governments their right to seek "damages" for injury to "natural resources" from Manitowoc, if that were deemed appropriate.[5] Although there would be insurance coverage for "damages" under § 107(a)(4)(C) of the Act, 42 U.S.C. § 9607(a)(4)(C), there is no coverage for "costs" under § 107(a)(4)(A) of the Act, 42 U.S.C. § 9607(a)(4)(A). *City of Edgerton*, 184 Wis. 2d at 784–785, 517 N.W.2d at 478–479.

In recognizing the critical distinction between "costs" and "damages," *City of Edgerton* followed the *en banc* decision in *Continental Ins. Cos. See City of Edgerton*, 184 Wis. 2d at 784, 517 N.W.2d at 478.

---

[5] The settlement/consent decree provided that it did not prejudice the rights of the United States and of Wisconsin against, *inter alia*, Manitowoc "with respect to all other matters, including but not limited to . . . [l]iability for damages for injury to, destruction of, or loss of natural resources."

*Continental Ins. Cos.* decided the same issue that is presented by this appeal.

■

*Continental Ins. Cos.* held that lawsuits by the United States and the State of Missouri for recovery of cleanup costs under § 107(a)(4)(A) of the Act, 42 U.S.C. § 9607(a)(4)(A), did not seek "damages" within the terms of policies that were either identical or substantially similar to those involved in this case. *Continental Ins. Cos.*, 842 F.2d at 985–987. As *Continental Ins. Cos.* explained: "These lawsuits are essentially equitable actions for monetary relief in the form of restitution or reimbursement of costs. [Citation omitted.] The federal and state governments have not sought recovery of 'damages for injury to, destruction of, or loss of natural resources,' pursuant to" § 107(a)(4)(C) of the Act, 42 U.S.C. § 9607(a)(4)(C). *Id.*, 842 F.2d at 987. Under *Continental Ins. Cos.* and, therefore, *City of Edgerton*, an action seeking recovery of past response costs incurred by federal and state governments is not an action seeking damages. As we said in *Sauk County v. Employers Ins.*, 202 Wis. 2d 434, 441, 550 N.W.2d 439, 442 (Ct. App. 1996): " *Edgerton* defined damages to mean 'legal damages' and specifically held that '[r]esponse costs assigned either under CERCLA or [state statutes] are by definition, considered to be equitable relief.' " (Brackets by *Sauk County*; citation from *Edgerton* omitted.)

■

This is not the first time that we have analyzed the impact of *City of Edgerton* on an insurance company's liability to its insured as a consequence of environmental contamination for which the insured was liable. *See Spic and Span, Inc. v. Continental Casualty Co.*, 203 Wis. 2d 118, 552 N.W.2d 435 (Ct.

App. 1996); *Sauk County*; *General Casualty Co. v. Hills*, 201 Wis. 2d 1, 548 N.W.2d 100 (Ct. App. 1996); *Public Service Corp. v. Heritage Mut. Ins. Co.*, 200 Wis. 2d 821, 548 N.W.2d 544 (Ct. App. 1996); and *Production Stamping*. None of the underlying actions in these cases, however, was a suit brought by or on behalf of a government agency seeking either reimbursement of remediation costs incurred by the agency under § 107(a)(4)(A) of the Act, 42 U.S.C. § 9607(a)(4)(A), or imposition on the insured of a plan for remediation. *Spic and Span*, 203 Wis. 2d at 122, 552 N.W.2d at 436; *Sauk County*, 202 Wis. 2d at 437, 550 N.W.2d at 441; *Hills*, 201 Wis. 2d at 4–5, 548 N.W.2d at 101–102; *Public Service Corp.*, 200 Wis. 2d at 824, 548 N.W.2d at 545; *Production Stamping*, 199 Wis. 2d at 325, 544 N.W.2d at 586. Distilled to their essence, *Spic and Span, Sauk County, Hills, Public Service Corp.*, and *Production Stamping* merely hold that a lawsuit brought against an insured by a non-government third-party to recover money the third-party has spent or will spend because of the insured's contamination of property not owned, leased, or controlled by the insured is a "suit for damages" as that phrase is defined and applied by *City of Edgerton*.[6]

---

[6] In *Spic and Span, Hills, Sauk County, Public Service Corp.*, and *Production Stamping*, as here, the underlying actions sought recovery from the insureds for contamination to property that the insureds did not own, lease, or control. *Spic and Span*, 203 Wis. 2d at 121–122, 552 N.W.2d at 436 (contamination extended beyond property leased by Spic and Span); *Sauk County*, 202 Wis. 2d at 443, 550 N.W.2d at 443 (contamination extended beyond Sauk County's property); *Hills*, 201 Wis. 2d at 10–11, 548 N.W.2d at 103–104 (Hills neither owned, leased nor controlled the contaminated property); *Public Service Corp.*, 200 Wis. 2d at 825–826, 548

When, however, either the United States or a state brings a lawsuit against an insured to recover incurred cleanup costs under § 107(a)(4)(A) of the Act, 42 U.S.C. § 9607(a)(4)(A), or to impose a plan for remediation, that action is not a "suit for damages" but is, rather, a suit for "equitable monetary relief." *City of Edgerton*, 184 Wis. 2d at 784, 517 N.W.2d at 478; *Sauk County*, 202 Wis. 2d at 439, 550 N.W.2d at 442; *Continental Ins. Cos.*, 842 F.2d at 987.

■

Although the City of Manitowoc contends that *City of Edgerton* is wrong because among other things it allegedly unknowingly overlooked a then-existing government regulation, these arguments were made to the supreme court before, *see City of Edgerton v. General Casualty Co.*, 190 Wis. 2d 510, 514, 527 N.W.2d 305, 306 (1995), and even though the regulation was not mentioned in the court's main decision, it was brought to the court's attention in a motion for reconsideration (which was denied without analysis or discussion over the dissent of three justices, *City of Edgerton v. General Casualty Co.*, 525 N.W.2d 736 (Table) (Wis., Oct. 25, 1994)). We are bound by *City of Edgerton. See State v. Whitaker*, 167 Wis. 2d 247, 261, 481 N.W.2d 649, 655 (Ct. App. 1992) (Court of Appeals is bound by Wisconsin Supreme Court precedent unless "that precedent is based on an interpretation of federal law that is no longer in accord with decisions by the United States Supreme Court."). Moreover, the decision's express reliance on *Continental Ins. Cos.* requires that we, as did *City of*

---

N.W.2d at 545–546 (contamination caused by contractor); *Production Stamping*, 199 Wis. 2d at 325, 544 N.W.2d at 586 (Production Stamping neither owned, leased nor controlled the contaminated property).

*Edgerton*, recognize the distinction between "costs" under § 107(a)(4)(A) of the Act, 42 U.S.C. § 9607(a)(4)(A), for which there is no coverage, and "damages" under § 107(a)(4)(C) of the Act, 42 U.S.C. § 9607(a)(4)(C), for which there is.

The federal and state complaints filed in federal court that underlie this action sought reimbursement for past and future remediation costs, and to have Manitowoc and the other defendants in that action remediate the contaminated property. The federal-court complaints did not seek "damages" for injury to "natural resources." If *City of Edgerton* is to be modified or overturned, it must be the supreme court that does so.

*By the Court.*—Judgment affirmed.